CHECKER CAB COMPANY, Respondent, vs. INDUSTRIAL COMMISSION and another, Appellants.

*February 8—March 9, 1943.*

For the appellant Industrial Commission there was a brief by *Stanley Rector* and *Arthur Barber,* both of Madison, and oral argument by *Mr. Barber.*

For the respondent there was a brief by *Clayton S. Schram,* attorney, and *Patrick J. McCaffrey* of counsel, both of Milwaukee, and oral argument by *Mr. McCaffrey.*

ROSENBERRY, C. J.   The defendant King was employed by the plaintiff company as a cabdriver and was in the service of the plaintiff from August 25, 1939, until March 13, 1940, when he was discharged.   It appears that he reported late for work on October 10 and October 27, 1939, was absent without leave on November 5 and 6, 1939, was discovered driving recklessly on November 4, 1939, and was guilty of motor idling on December 31, 1939; and on February 10, 1940, he was warned about violation of the company's rules in 'low flagging,—when a driver who has discharged his passengers does not put up the meter flag, it is possible for him to make other pickups on the same load and collect the fare and not turn it in.

During the period of his employment, King had six accidents, the first on September 16, 1939, when he collided with another car at a street intersection; the second accident oc-

curred on November 13, 1939, as he was pulling in to the curb at the Saint Paul depot when he struck a fireplug with the right front fender; the third on December 8, 1939, the defendant while attempting to park his cab at the Boston Store struck the right front fender of another vehicle, the driver of which was pulling out from the curb; the fourth on January 15, 1940, while he was pulling away from the curb, was struck by another vehicle moving in the same direction, King did not see the other vehicle until the collision occurred; the fifth on March 1, 1940, King was driving his cab south on Second street when he collided with another vehicle by skidding into it; and sixth on March 11, 1940, King had a collision with another vehicle on North Third street. He was also charged with making a false report with respect to the accident which occurred on March 11, 1940.

The employer denied unemployment benefits. The matter was brought on for hearing before the appeal tribunal and from the decision made by that tribunal an appeal was taken to the Industrial Commission. The commission reviewed the evidence and found that it supported the appeal tribunal's findings. This requires us to make an examination of those findings.

The appeal tribunal under the statute is composed of an examiner, an employee, and an employer representative. The employee and employer representatives concurred in a finding to the effect that the accidents which King had prior to the accident on March 1, 1940, together with other violations

"would have constituted just cause for discharge as misconduct. . . . The accident for which he was discharged happened on March 11, when he was going north on Third street . . . and it is my opinion that he was not to blame for this accident, and therefore he was not discharged for misconduct under sec. 108.04 (4) (a) and the initial determination of the deputy should be affirmed and benefits allowed."

Formal findings were prepared by the chairman of the appeal tribunal in which the delinquencies of King were recited and concluded:

"During the period of his employment the employee was involved in several minor traffic accidents. He was warned to be more careful, and, after the occurrence of one of these accidents, he was given a disciplinary layoff and told that he would be discharged if he had another accident which was his fault. With due reference to the high standards of care which may be expected of cabdrivers, the employee's accident record, while reflecting the hazards and risks attendant on continuous city driving, does not show a course of conduct which evidences a lack of proper regard for the employer's interests.

"The employer further alleged that the employee violated certain rules of the company. However, under all circumstances, it was clear that the employee would not have been discharged but for the last accident and his report concerning it.

"The appeal tribunal therefore finds that the employee was not discharged for misconduct connected with his employment, within the meaning of section 108.04 (4) (a) of the statutes.

## "DECISION.

"The commission deputy's initial determination is affirmed. Benefits are allowed accordingly.

"Mr. Prahl and Mr. Hermann concur in the result."

From these statements it appears that the members of the appeal tribunal did not agree upon the fundamental question involved, that of misconduct of the employee. The employee and employer members agreed that King was guilty of misconduct within the meaning of the statute, but concluded that because he was not discharged forthwith but was allowed to resume his work with a warning that if he had another accident he would be discharged, the cause of the discharge was not his misconduct but the accident for which he was not to

blame. That view seems to have been shared by the chairman for he says:

"It was clear that the employee would not have been discharged but for the last accident."

We concur in the view of the trial court that if the defendant was guilty of misconduct within the meaning of the statute warranting his discharge, the last accident was the occasion of and not the reason for his discharge. The trial court said:

"The fact that the employer kept the employee until six accidents happened, and fired him after the sixth [accident], does not mean that there was no cause for the discharge except the sixth [accident]. No metaphysical gymnastics can change the truth that the employer fired the man because he had had six accidents, not because he had had one."

The appeal tribunal apparently had the view, in which the commission concurred, that in some way the admitted misconduct was condoned because the employer continued King in his employment. This is a clear mistake of law. Condonation does not apply to such a situation. It may be that if the employee had continued in his employment for many months a waiver of his prior misconduct might be inferred but certainly no such inference can be made under the facts of this case.

It is considered that the trial court correctly held that the defendant King was discharged for misconduct within the meaning of sec. 108.04 (4) (a), Stats., as that section is interpreted in *Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 296 N. W. 636, and companion cases. Unless carelessness, incompetency, disregard of the employer's interests, and dishonesty are to be intrenched by the provisions of the Unemployment Compensation Act (ch. 108), it must be held that the finding of misconduct made by a majority of the members of the appeal tribunal is sustained by the evidence

in this case. From the undisputed facts the cause of discharge was misconduct and the last accident. The employer would not have considered the last accident a cause for discharge if that had been the employee's only delinquency.

*By the Court.*—Judgment affirmed.

FRITZ, J., dissents.