Rodney EDDINS, Relator,

v.

CHIPPEWA SPRINGS CORP.,
Respondent,

Commissioner of Economic
Security, Respondent.

No. C5–86–296.

Court of Appeals of Minnesota.

June 17, 1986.

Kathleen M. Traxler, Judicare of Anoka County, Inc., Anoka, for Rodney Eddins.

Chippewa Springs Corp., Minneapolis, pro se.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Economic Security.

Considered and decided by NIEREN-GARTEN, P.J., and LANSING and HUS-PENI, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Chippewa Springs' automobile liability insurer refused to insure Chippewa Springs' employee, Rodney Eddins, because of his poor driving record. Eddins was discharged from his position as a driver and applied for unemployment benefits. He appeals the Commissioner's determination that he was discharged for misconduct. We conclude that the record does not support a finding that Eddins' actions were sufficiently willful or deliberate to amount to misconduct, and we reverse.

## FACTS

The facts of Eddins' discharge are not disputed. Chippewa Springs employed Rodney Eddins as a full-time relief driver from February 1983 to October 1985. During this time Eddins received six traffic tickets. He received the first ticket during working hours in 1983 for making an illegal left turn. The remaining tickets, for speeding and making an illegal lane change, were received while Eddins was off duty and driving his own vehicle. Eddins paid all of the fines and did not lose his driver's license. There is no claim that he missed work or that his work was affected by the violations.

Chippewa Springs warned Eddins in April 1985 that he would be discharged if he received another ticket. Eddins was ticketed twice for speeding after the warning. Chippewa Springs did not claim that Eddins' performance was otherwise deficient. When he was discharged, Eddins was told that he could use the name of a vice president of Chippewa Springs as a reference.

## ISSUE

Did Eddins commit misconduct by receiving six tickets for moving traffic violations between February 1983 and October 1985?

## ANALYSIS

The Commissioner's representative concluded that Eddins' behavior constituted misconduct under *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973). Misconduct is a mixed question of fact and law. *Colburn v. Pine Portage Madden Bros.*, 346 N.W.2d 159, 161 (Minn. 1984). While we are bound by factual findings which are reasonably supported by the evidence, questions of law are independently reviewed. *Smith v. Employers Overload Co.*, 314 N.W.2d 220, 221 (Minn.1981). Our review necessarily takes into account that the burden of proving misconduct is

upon the employer, *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 459–60, 209 N.W.2d 397, 401 (1973), and that misconduct is to be narrowly construed. *Smith*, 314 N.W.2d at 222.

In analyzing a case which also involved a driver who was discharged for his driving conduct and denied unemployment benefits, the Minnesota Supreme Court drew a distinction between inadvertence or negligence and misconduct as defined by *Tilseth*. In *Swanson v. Columbia Transit Corp.*, 311 Minn. 538, 248 N.W.2d 732 (1976), a school bus driver who had been involved in three accidents within 47 days was discharged for misconduct. All three accidents had occurred on the job, and grievance committees considering the first and third accidents determined that Swanson was at fault in the first, and in the third had driven carelessly and at an excessive rate of speed. The court reversed the denial of unemployment benefits, concluding that the employee's behavior did not constitute misconduct.

Other courts have determined that an employee's driving record may evidence the culpability necessary to establish misconduct within the meaning of state unemployment laws.[1] We are persuaded, however, that the reasoning used by the Minnesota Supreme Court in *Swanson* applies here.

The Commissioner's representative distinguished Eddins' conduct from the facts of *Swanson* because *Swanson* did not involve an employer's loss of insurance and because Eddins' traffic violations were not accidents but were willful or deliberate acts. We are not persuaded by these distinctions.

Courts in at least three other jurisdictions have refused to find misconduct where an employer's insurance status has been adversely affected by an employee's driving record. *See Atlantic Freight Lines v. Unemployment Compensation Board of Review*, 188 Pa.Super. 189, 146

---

1. *See Checker Cab Co. v. Industrial Commission*, 242 Wis. 429, 8 N.W.2d 286 (1943); *Cadden v. Unemployment Compensation Board of Review*, 195 Pa.Super. 159, 169 A.2d 334 (Pa.Super.Ct. 1961); *Bass v. Greyhound Lines East*, 50 A.D.2d 959, 375 N.Y.S.2d 694 (1975); *Cook v. Iowa Dept. of Job Service*, 299 N.W.2d 698 (Iowa 1980).

A.2d 333 (1958); *Wright's Furniture Mill, Inc. v. Industrial Commission of Utah,* 707 P.2d 113 (Utah 1985); *Duperry v. Administrator, Unemployment Compensation Act,* 25 Conn.Sup. 409, 206 A.2d 476 (1964). Additionally, the basis on which Chippewa Springs made its determination to discharge Eddins, its insurer's action, does not bear on the willfulness or lack of willfulness in Eddins' actions.

While Eddins' acts support strong inferences of inadvertence or negligence, we do not find a sufficient basis to support a finding of disqualifying misconduct. The driving incidents, with one exception, occurred on his own time; he paid the tickets himself; he disputes the validity of one of the tickets; he was otherwise considered a good employee; and the six violations were minor and occurred over a period of more than two and one-half years.

### DECISION

Reversed.