**Robert WALSETH, Relator,**

v.

**L.B. HARTZ WHOLESALE, Respondent,**

**Commissioner of Jobs and Training, Respondent.**

No. C9-86-1564.

Court of Appeals of Minnesota.

Jan. 20, 1987.

Steven M. Bradt, Grand Rapids, for Walseth.

L.B. Hartz Wholesale, pro se.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs and Training.

Mark S. Anderson, Shirley A. Brantingham, St. Paul, for amicus Minnesota Ass'n of Commerce & Industry.

Considered and decided by POPOVICH, C.J., and PARKER and LESLIE, JJ., with oral argument waived.

### OPINION

PARKER, Judge.

Respondent L.B. Hartz Wholesale ("Hartz") discharged employee-truck driver Robert Walseth when Hartz learned that its insurance company would not continue to insure him due to his off-duty driving

record. Walseth applied for unemployment compensation, and the Commissioner determined that he was disqualified from receiving benefits because his loss of insurability constituted misconduct. We reverse.

## FACTS

The facts in this case are not disputed. Hartz employed Walseth as a semi-truck driver for approximately 15 years. He was a good employee, and Hartz was satisfied with his work.

On December 15, 1985, Walseth was arrested and charged with driving while intoxicated. He was not on duty at the time. A judge subsequently reduced the DWI charge to careless driving, fined him $500, and revoked his driver's license effective January 13, 1986.

When notified of the incident, Hartz's insurance carrier informed Hartz that it would no longer cover Walseth. Hartz thereupon discharged him effective January 11, 1986. The next month, Walseth received a limited license to drive.

Walseth applied for unemployment compensation benefits, and at a hearing before a Department referee, Hartz's corporate secretary testified that Walseth was discharged solely because of the insurance company's action. The secretary also stated that if the insurance company would agree to cover him, Hartz would take him back.

The referee and, on appeal, a Commissioner's representative determined that Walseth had been discharged for misconduct, and he appeals.

## ISSUE

Did Walseth engage in misconduct within the meaning of the unemployment compensation laws?

## DISCUSSION

An employee who has been discharged for misconduct is disqualified from receiving unemployment compensation benefits. Minn.Stat. § 268.09, subd. 1(2) (1984). "Misconduct" has been defined as follows:

[T]he intended meaning of the term "misconduct" * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct" * * *.

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)). When the facts are not in dispute, misconduct is a question of law to be independently reviewed by this court. *Dean v. Allied Aviation Fueling Co.*, 381 N.W.2d 80, 83 (Minn.Ct.App.1986) (citing *Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 221 (Minn.1981)).

The Commissioner, Hartz and the amicus Minnesota Association of Commerce and Industry all urge this court to adopt the Commissioner's conclusion that Walseth's driving violation, resulting in his loss of insurability, constituted misconduct. However, that would, we conclude, run counter to our recent decision in *Eddins v. Chippewa Springs Corp.*, 388 N.W.2d 434 (Minn. Ct.App.1986). In *Eddins* an employer's insurance company refused to cover an employee-driver who had received six tickets for moving violations over a period of two years and eight months. The employee received the first ticket during working hours for making an illegal left turn and received the other five tickets (for speeding and making an illegal lane change) while off duty and driving his own vehicle. This

court reversed the Commissioner's determination that the employee had engaged in misconduct, indicating that the insurer's actions should not be the basis for a finding of misconduct:

[T]he basis on which Chippewa Springs made its determination to discharge Eddins, its insurer's action, does not bear on the willfulness or lack of willfulness in Eddins' actions.

*Id.* at 436.

If we were to conclude that an employee is guilty of misconduct simply because his employer's insurance company refuses to cover him, we would, in effect, delegate to insurance companies the responsibility for determining employee misconduct. We do not believe such delegation would be proper. Here, as in *Eddins,* the insurer's decision to refuse coverage for the employee was based on reasons unrelated to the question of whether the employee's behavior was "wilful," "deliberate" or "culpable" within the meaning of *Tilseth.*

The Commissioner's representative sought to distinguish this case from *Eddins* by determining that Walseth's driving violations were more serious:

The Court indicated that the violations in *Eddins* were *minor.* This Representative will *not* find that driving with an alcohol content in the blood of more than .10 per cent is a *minor* traffic offense. Further, this Representative will not find that the matter to which [Walseth] ultimately pled guilty, careless driving, is simply a *minor* traffic matter.

(Emphasis in original).

The above language conveys, *sub silentio,* the representative's presumption that Walseth was in fact guilty of driving while intoxicated. This presumption ignores the fact that a judicial determination was made to accept Walseth's plea of careless driving. The record reveals no reason for believing that judicial determination to have been imprudent. Nor did the parties present evidence at the unemployment compensation hearing on the issue of whether

Walseth drove while under the influence. Therefore, we consider this matter solely in light of the careless driving conviction.

On that basis, we cannot uphold the Commissioner's conclusion that Walseth's one-time conviction for careless driving was significantly more serious than the six driving violations in *Eddins.* We also point out that our supreme court in *Swanson v. Columbia Transit Corp.,* 311 Minn. 538, 248 N.W.2d 732 (1976), refused to find misconduct where a school bus driver was discharged after he was involved in three accidents within 47 days. All three accidents occurred while Swanson was driving the school bus; grievance committees determined that he was at fault in one accident and had driven carelessly and at an excessive rate of speed in another.[1] We cannot say that Walseth's conduct was more serious than Swanson's, particularly since Walseth's driving incident occurred on his own time and he was otherwise considered a good employee.

The Commissioner's representative also sought to distinguish this case from *Eddins* on the basis that Walseth temporarily lost his driver's license. However, at the hearing Hartz's corporate secretary stated unequivocally that the only reason for Walseth's discharge was his loss of insurability and that the company would take him back if the insurance company would cover him. The fact that Walseth's license was revoked, not having been a reason for his discharge, cannot be used to distinguish this case from *Eddins.*

Undoubtedly at some future date the case will arise where a driver's separation from employment is actually based on a license revocation or a conviction of driving while intoxicated. We do not mean to imply that in such a case the driver might not be found guilty of misconduct. However, we do note that when similar issues have arisen in other jurisdictions, the courts are split. *See, e.g., Look v. Maine Unemployment Insurance Commission,* 502 A.2d

1. The *Swanson* court recognized that there is a distinction between a sufficient basis for discharge and acts amounting to disqualifying misconduct under *Tilseth. Id.* 248 N.W.2d at 733.

1033 (Maine 1985); *Echols v. Michigan Employment Security Commission,* 380 Mich. 87, 155 N.W.2d 824 (1968); *Department of Industrial Relations v. Rich,* 42 Ala.App. 80, 152 So.2d 692 (1963) (finding employee guilty of misconduct). *But see Continental Oil Co. v. Board of Review of Industrial Commission,* 568 P.2d 727 (Utah 1977); *Przekaza v. Department of Employment Security,* 136 Vt. 355, 392 A.2d 421 (1978); *Huff v. Commonwealth, Unemployment Compensation Bd. of Review,* 40 Pa.Commw. 11, 396 A.2d 94 (Pa. Commw.Ct.1979), *aff'd sub nom. Smith v. Unemployment Compensation Board,* 487 Pa. 448, 409 A.2d 854 (1980) (holding employee not guilty of misconduct).

## DECISION

Walseth's loss of insurability, resulting from his careless driving conviction, did not constitute misconduct.

Reversed.