**Gary L. NELSON, Relator,**

**v.**

**HARTZ TRUCKLINE, Commissioner of Jobs & Training, Respondents.**

**No. C9–86–1693.**

Court of Appeals of Minnesota.

March 3, 1987.

Review Denied April 29, 1987.

Richard N. Sather, Thief River Falls, for relator.

Hartz Truckline, pro se.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs & Training.

Heard, considered and decided by
POPOVICH, C.J., and
NIERENGARTEN and STONE, JJ.*

## OPINION

NIERENGARTEN, Judge.

The employer's insurance was cancelled when it was discovered that an employee-driver had received four speeding tickets. The driver was fired, and he applied for unemployment compensation benefits. We affirm the Commissioner's determination that receipt of the four speeding tickets constituted misconduct. We affirm.

## FACTS

Hartz Truckline discharged Gary Nelson, an over-the-road truck driver, when Hartz learned that its insurance was being cancelled due to Nelson's poor driving record. Nelson had received speeding tickets in October 1984, January 1985, April 1985 and May 1985. Each of these incidents occurred while Nelson was driving a Hartz truck, and Nelson received warning letters from Hartz in April 1985 and June 1985.

Hartz was satisfied with Nelson's job performance, and attempted to find another insurer who might provide the necessary coverage. Hartz discharged Nelson only because his driving record rendered him uninsurable. Nelson applied for unemployment compensation, but his claim for benefits was denied by a Commissioner's representative, who determined that Nelson's driving violations constituted misconduct. Nelson has appealed.

## ISSUE

Did the receipt of four speeding tickets constitute misconduct?

## ANALYSIS

"Misconduct" for unemployment compensation purposes has been defined as follows:

> [T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or *negligence of such degree or recurrence as to* manifest equal culpability, wrongful intent or evil design, or to *show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.* On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct.'

*Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (emphasis supplied).

■ Issues of misconduct involve mixed questions of fact and law. *Colburn v. Pine Portage Madden Bros.,* 346 N.W.2d 159, 161 (Minn.1984). This court is bound by factual findings of the Commissioner's representative which are reasonably supported by the evidence, but questions of law may be independently reviewed. *Smith v. Employers' Overload Co.,* 314 N.W.2d 220, 221 (Minn.1981). Here, Nelson does not dispute the Commissioner's findings regarding his speeding violations; thus, we need only determine whether, as a matter of law, those four violations constituted misconduct.

In *Eddins v. Chippewa Springs Corp.,* 388 N.W.2d 434 (Minn.Ct.App.1986) we held that an employee-driver did not engage in misconduct, although his employer's insurance was cancelled because the driver had received six tickets for moving traffic violations over a period of two years and eight months. The driver received the first ticket during working hours for making an illegal left turn, and received the other five tickets (for speeding and for making an illegal lane change) while off-duty and driving his own vehicle. We stated in *Eddins:*

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

[T]he basis on which Chippewa Springs made its determination to discharge Eddins, its insurer's action, does not bear on the willfulness or lack of willfulness in Eddins' actions.

*Id.* at 436.

In *Walseth v. L.B. Hartz Wholesale*, 399 N.W.2d 207 (Minn.Ct.App.1987), where an employee's discharge was again based upon the employer's loss of insurability, we explained:

If we were to conclude that an employee is guilty of misconduct simply because his employer's insurance company refuses to cover him, we would, in effect, delegate to insurance companies the responsibility for determining employee misconduct. We do not believe such delegation would be proper. Here, as in *Eddins,* the insurer's decision to refuse coverage for the employee was based on reasons unrelated to the question of whether the employee's behavior was "wilful," "deliberate" or "culpable" within the meaning of *Tilseth.*

*Id.* at 209. In *Schnaare v. Five G's Trucking*, 400 N.W.2d 762 (Minn.Ct.App. Feb. 17, 1987) we saw no reason to distinguish *Walseth* where an employee had received a citation for DWI and was discharged because his employer's insurance company refused to continue coverage.

While *Eddins, Walseth,* and *Schnaare* refused to uphold determinations of employee misconduct based upon the insurers' actions, in those cases we also examined the employee's underlying conduct which led to the loss of insurability. Thus, in *Eddins* we concluded:

While Eddins' acts support strong inferences of inadvertence or negligence, we do not find a sufficient basis to support a finding of disqualifying misconduct. The driving incidents, with one exception, occurred on his own time; he paid the tickets himself; he disputes the validity of one of the tickets; he was otherwise considered a good employee; and the six violations were minor and occurred over a period of more than two and one-half years.

*Eddins,* 388 N.W.2d at 436. In *Schnaare,* we refused to uphold the Commissioner's conclusion that an employee's driving offense was more "serious" and therefore constituted misconduct, since the Commissioner's determination was based on an erroneous presumption that the employee was guilty of DWI, even though he was still awaiting trial on the charge. Likewise, in *Walseth,* we determined that an employee's one-time conviction for careless driving (reduced from a charge of DWI) was not significantly more serious than the six driving violations in *Eddins* or an employee's actions in *Swanson v. Columbia Transit Corp.*, 311 Minn. 538, 248 N.W.2d 732 (1976).

In *Swanson,* a school bus driver was discharged from his job because he had been involved in three accidents within 47 days. All three accidents had occurred on the job, and a grievance committee had determined that the bus driver was at fault in one accident and was speeding and driving carelessly at the time of another accident. Nevertheless, the *Swanson* court reversed the Commissioner's determination that the employee had engaged in misconduct, concluding:

Taken separately, employee's accidents only represent incidents of inadvertence or negligence. While *we do not rule out the possibility of a series of negligent or inadvertent acts amounting to misconduct,* the evidence does not support such a conclusion in this case.

*Id.* at 539, 248 N.W.2d at 733 (footnote omitted; emphasis supplied).

In the present case, after examining the underlying conduct which led to the loss of insurability, we concur with the Commissioner's determination that Nelson's actions were "significantly more serious" and demonstrated the culpability necessary to support a determination of misconduct. In short, we believe Nelson's actions cannot be characterized as anything but the "series of negligent or inadvertent acts amounting to misconduct" to which the *Swanson* court was referring when it recognized that some behavior should be

distinguished from mere incidents of inadvertence or negligence. While we realize that the question is close, a line must be drawn somewhere. The facts of the present case cross that line into the bounds of misconduct.

We base our conclusion upon several important elements. Not only did Nelson violate the law upon four occasions within a relatively short period of time; each of those violations occurred on Hartz's time and in Hartz's vehicle. Thus, Hartz's exposure to liability was heightened by Nelson's continued behavior. Further, the incidents here were not simply accidents, but were repeated violations of public safety statutes. Nor can the four speeding violations be characterized as "minor," as were the traffic offenses in *Eddins*. Finally, the record discloses that Nelson continued to speed even after Hartz issued him a warning letter in April 1985; he received his fourth speeding ticket approximately two weeks later.

These facts, when combined, support the conclusion that Nelson engaged in negligence of such recurrence as to evidence an intentional and substantial disregard of Hartz's interests.

### DECISION

Under the facts of this case, Nelson's receipt of four speeding tickets constituted misconduct disqualifying him from the receipt of unemployment compensation benefits.

Affirmed.