**Edward MARKEL, Relator,**

v.

**CITY OF CIRCLE PINES, Commissioner of Jobs and Training, Respondents.**

**No. C4–90–1444.**

Court of Appeals of Minnesota.

Jan. 15, 1991.

Review Granted March 15, 1991.

Stan Nathanson, Minneapolis, for Edward Markel.

City of Circle Pines, pro se.

Hubert H. Humphrey, III, Atty. Gen., Steven B. Liss, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs and Training.

Considered and decided by KALITOWSKI, P.J., and FOLEY and NORTON, JJ.

## OPINION

KALITOWSKI, Judge.

Relator obtained a writ of certiorari seeking review of a decision by the Department

of Jobs and Training (Department). Relator argues he did not commit misconduct for unemployment compensation purposes when he lost his driver's license and could no longer effectively perform his job duties. We disagree and affirm.

## FACTS

Relator Edward Markel was employed as a utilities worker by respondent City of Circle Pines between April 1989 and January 1990. Markel's job required that he drive a City van or pickup truck. When Markel was hired, he was told he would need a valid driver's license to retain his job.

Prior to his employment with the City, Markel had committed two driving violations. In 1970, Markel pleaded guilty to a charge of driving while intoxicated and in 1985 his license was revoked pursuant to Minnesota's implied consent laws.

On the evening of September 22, 1989, Markel fell asleep while driving and ran his vehicle into a telephone pole. The accident occurred after working hours and in Markel's own vehicle. Markel was under the influence of alcohol at the time. Markel was charged with driving while under the influence. He pleaded guilty and his driver's license was revoked for one year.

In early October 1989, the City placed Markel on suspension because he did not have a driver's license. On October 19, 1989, Markel obtained a Sullivan driver's license, which authorized him to drive only Class "B" vehicles owned by the City.

Markel returned to work for the City, but due to his limited license, he was only able to drive the City's dump truck, and not the van or pickup trucks. The City allowed Markel to haul rock and sweep ice rinks, but informed Markel that he needed to obtain a Class "C" license to resume his normal job duties. Markel was unable to obtain a Class "C" license, and on or about January 20, 1990, the City discharged him because of his inability to perform his normal duties as a result of the driver's license revocation.

Markel applied for unemployment compensation, but the Department denied his claim for benefits. Markel appealed to a Department referee, who conducted a hearing and affirmed the denial of benefits. Markel appealed the referee's decision to a Commissioner's representative, who affirmed the denial of benefits. Markel obtained a writ of certiorari, seeking review of the Commissioner's representative's decision.

## ISSUES

1. Did the Commissioner's representative err by incorporating a new factual finding in his decision?

2. Did the Commissioner's representative err by concluding that Markel committed misconduct disqualifying him from receiving unemployment compensation benefits?

## ANALYSIS

### I.

■ Our scope of review of the Commissioner's decision is limited:

> The findings are reviewed in the light most favorable to the decision and, if there is evidence reasonably tending to sustain them, they will not be disturbed on appeal.

*Grotjohn v. Cornbelt Foods, Inc.,* 370 N.W.2d 48, 50 (Minn.App.1985) (citing *White v. Metropolitan Medical Center,* 332 N.W.2d 25, 26 (Minn.1983)).

On appeal, we will review the Commissioner's representative's decision, rather than the referee's. *See Tester v. Jefferson Lines,* 358 N.W.2d 143, 145 (Minn.App. 1984), *pet. for rev. denied* (Minn. Mar. 13, 1985) (citing *Chellson v. State Div. of Employment & Sec.,* 214 Minn. 332, 335, 8 N.W.2d 42, 44 (1943)).

The Minnesota legislature provided that, in reviewing a decision of a department referee, the Commissioner is free to "affirm, modify, or set aside any finding of fact or decision, or both, of the referee * * *." Minn.Stat. § 268.10, subd. 5 (1984). The Commissioner may make an independent assessment of the

evidence based upon the evidence and testimony presented at the hearing before the referee.

*Grotjohn*, 370 N.W.2d at 50.

Markel disputes the Commissioner's representative's finding that he ultimately pleaded guilty to the charge of driving while under the influence of alcohol on September 22, 1989. This finding is supported by Markel's own testimony at the hearing before the referee, and under our narrow scope of review, we will not disturb the Commissioner's finding.

## II.

■ The Commissioner's representative determined that Markel's inability to drive the City's van or pickup trucks, due to the revocation of his driver's license, constituted misconduct disqualifying him from the receipt of unemployment compensation benefits. *See* Minn.Stat. § 268.09, subd. 1(b) (Supp.1989). "Misconduct" has been defined as follows:

> [T]he intended meaning of the term "misconduct" * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct."

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973). Whether Markel's actions constituted misconduct is ultimately a question of law, to be independently reviewed on appeal. *See McGowan v. Executive Express Transp. Enters., Inc.*, 420 N.W.2d 592, 594 (Minn.

1988). The question is not whether the City was justified in discharging Markel; rather, the issue is whether he should be disqualified from receiving unemployment benefits. *See Ress v. Abbott Northwestern Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn.1989).

Markel argues his inability to perform his duties as a result of the driver's license revocation did not constitute misconduct. In support of this argument, Markel cites *Swanson v. Columbia Transit Corp.*, 311 Minn. 538, 248 N.W.2d 732 (1976). In *Swanson*, a bus driver was involved in three accidents while he was on duty. The driver was fired, and he applied for unemployment compensation benefits. The Commissioner denied his claim for benefits, determining that he had committed misconduct warranting disqualification. On appeal, the Minnesota Supreme Court reversed, concluding:

> Taken separately, employee's accidents only represent incidents of inadvertence or negligence. While we do not rule out the possibility of a series of negligent or inadvertent acts amounting to misconduct, the evidence does not support such a conclusion in this case.

*Id.* at 539, 248 N.W.2d at 733 (footnote omitted).

We conclude *Swanson* is distinguishable, because the driver's actions were merely careless or negligent. In addition, the employee in *Swanson* was still able to drive for his employer after the accident; here, the revocation of Markel's driver's license rendered him unable to perform the duties for which he was employed.

We also find distinguishable the facts in *Eddins v. Chippewa Springs Corp.*, 388 N.W.2d 434 (Minn.App.1986), and *Walseth v. L.B. Hartz Wholesale*, 399 N.W.2d 207 (Minn.App.1987). In *Eddins*, an employee received six traffic tickets during the course of his employment as a driver. The employee received one traffic ticket during working hours, and received the others while he was off duty and driving his own vehicle. The employee did not lose his driver's license, and he was otherwise considered a good employee. Nevertheless,

the employee was discharged because the employer's insurer refused to cover him. The *Eddins* court distinguished misconduct and inadvertence or negligence, citing *Swanson.* The court concluded:

> [T]he basis on which Chippewa Springs made its determination to discharge Eddins, its insurer's action, does not bear on the willfulness or lack of willfulness in Eddins' actions.
>
> While Eddins' acts support strong inferences of inadvertence or negligence, we do not find a sufficient basis to support a finding of disqualifying misconduct. The driving incident, with one exception, occurred on his own time; he paid the tickets himself; he disputes the validity of one of the tickets; he was otherwise considered a good employee; and the six violations were minor and occurred over a period of more than two and one-half years.

*Eddins,* 388 N.W.2d at 436.

A similar result was reached in *Walseth,* where the court noted again that the employee was discharged solely because of the employer's insurance company's actions; the employer would have retained the driver as an employee. The *Walseth* court also noted that the driver's one-time conviction of careless driving was not significantly more serious than the six minor driving violations in *Eddins* or the three accidents in *Swanson.*

In the present case, Markel's violation cannot be considered "minor" as in *Eddins,* or "not significantly more serious" as in *Walseth.* Rather, the facts of the present situation are more similar to those in *Nelson v. Hartz Truckline,* 401 N.W.2d 436 (Minn.App.1987), *pet. for rev. denied* (Minn. Apr. 29, 1987). There, an employee-driver received four speeding tickets within eight months while driving the employer's vehicle on company time. The employee was discharged only because his driving record rendered him uninsurable. The *Nelson* court distinguished *Eddins* and *Walseth,* examining the underlying conduct of the employee-driver. The court determined that the employee's conduct was more serious, demonstrating the culpability necessary to support a determination of misconduct. The *Nelson* court noted that the employee had continued to speed even after he had been warned by his employer. The court also noted that the incidents "were not simply accidents, but * * * repeated violations of public safety statutes":

> In short, we believe Nelson's actions cannot be characterized as anything but the "series of negligent or inadvertent acts amounting to misconduct" to which the *Swanson* court was referring when it recognized that some behavior should be distinguished from mere incidents of inadvertence or negligence.

*Id.* at 438–39.

In the present case, the actual impetus for Markel's discharge was the Commissioner of Public Safety's refusal to issue him a Class "C" license. Nevertheless, the basis for the Commissioner's refusal was Markel's accident on September 22, 1989, which was the result of Markel's intoxication. The underlying conduct causing Markel's discharge, therefore, was at least as culpable as that in *Nelson. See Heddan v. Dirkswager,* 336 N.W.2d 54, 63 (Minn. 1983) ("[D]runken drivers pose a severe threat to the health and safety of the citizens of Minnesota.").

We note that Markel's driving violation occurred while he was off duty; however, we find a sufficient nexus between Markel's actions and his job, since the driving incident led to the revocation of Markel's license which, in turn, prevented him from doing his job. In this respect, the facts here are comparable to those in *Smith v. American Indian Chemical Dependency Diversion Project,* 343 N.W.2d 43 (Minn. App.1984).

In *Smith,* an employee was discharged due to an unexcused absence from work. The employee was absent because he was in jail for failing to pay a speeding ticket. The *Smith* court affirmed the Commissioner's determination that the employee's actions constituted misconduct. The court noted:

> [P]ublic policy prohibits treating illegal failure to pay speeding tickets as ordinary negligence or inadvertance [sic].

Smith's unavailability for work due to his incarceration amounted to disregard of attendance standards which his employer had a right to expect him to obey.

*Id.* at 45.

Here, also, we believe public policy prohibits treating Markel's driving violation as ordinary negligence or inadvertence. The legislature has provided that unemployment reserves are "to be used for the benefit of persons unemployed through no fault of their own." Minn.Stat. § 268.03 (1988). Markel's unemployment was due to his own "fault," since he chose to drink and drive.

We note that Markel is an alcoholic and that the legislature has characterized alcoholism as a serious illness. *See* Minn.Stat. § 268.09, subd. 1(c)(2) (1988). An individual who is discharged "due to" his alcoholism may not be denied unemployment benefits under the misconduct disqualification of Minn.Stat. § 268.09, subd. 1(b). *See* Minn. Stat. § 268.09, subd. 1(c)(2). Here, however, Markel was not discharged "due to" his alcoholism, but because of his inability to drive due to the revocation of his license.

## DECISION

Markel committed disqualifying misconduct when he chose to drink and drive, resulting in the revocation of his driver's license and his consequent inability to perform his job duties.

Affirmed.

NORTON, Judge, dissenting.

I respectfully dissent from the majority opinion and would reverse the representative of the Commissioner. It seems to me that this case is more like the *Nelson*, *Eddins* and *Walseth* cases where the employees were discharged as a result of the action of a third party: in the aforementioned cases, the actions of the employers' insurers, while here, the action of the Commissioner of Public Safety.

Markel's discharge was based on one incident of negligence. As a result, the Commissioner of Public Safety appears to have arbitrarily limited Markel's class C license to driving dump trucks and not other vehicles needed by his employer. Markel's discharge was due to the Commissioner's action, not his own. I would not distinguish the *Eddins* and *Walseth* cases as the majority has done, but would follow those cases.

The Commissioner's representative found that Markel is an alcoholic, which the majority notes, as well as the legislature finding that alcoholism is a serious illness. Contrary to the majority, I would also conclude that Markel's accident caused by his alcoholism should not be considered the equivalent of intentional failure to pay a speeding ticket.