Edward MARKEL, Relator,

v.

CITY OF CIRCLE PINES, Commissioner of Jobs and Training, Respondents.

No. C4–90–1444.

Supreme Court of Minnesota.

Jan. 17, 1992.

Stanley H. Nathanson, Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen., Steven B. Liss, Special Asst. Atty. Gen., St. Paul, for respondents.

GARDEBRING, Justice.

This is an appeal of a split decision of the Minnesota Court of Appeals, *Markel v. City of Circle Pines,* 465 N.W.2d 408 (Minn.App.1991). The court of appeals affirmed the Commissioner of Jobs and Training's decision to disqualify Edward Markel from the receipt of unemployment benefits, agreeing with the Commissioner that Markel was discharged for misconduct. The court of appeals also affirmed the Commissioner's finding of fact that Markel had pleaded guilty to a charge of driving with a blood alcohol level of greater than .10. *Id.* at 410. Markel also raises two new issues, not raised below, challenging the Commissioner's finding of fact that Markel was discharged because he could no longer perform his normal job duties.

From April 1989 to January 1990, Edward Markel worked for the City of Circle Pines as a utility worker. His job duties required driving the city's vehicles, normally either a van or a pickup truck. When hired, Markel was told he would need a valid driver's license. Markel had a Class B driver's license, which allowed him to drive the Class C vehicles he drove on the job, and heavier vehicles up to 26,000 pounds. His regular duties included driving to lift stations and maintaining water system pump houses. He also did other jobs as necessary, including reading meters and occasionally repairing gas lines.

After work on September 22, 1989, Markel had an accident while driving his own vehicle. Markel fell asleep at the wheel of his car and hit a telephone pole. He pleaded guilty to driving with a blood alcohol level greater than .10. As a result, the Department of Public Safety revoked his driver's license for one year. At the time of his accident Markel had two previous alcohol-related driving violations, one of which involved license revocation.

The City of Circle Pines suspended Markel after his license was revoked because he could no longer perform his normal job duties. On October 16, 1989, Markel applied to the Department of Public Safety for a limited license, which would allow him to drive for purposes of employment. He brought a letter from his supervisor to attest to the fact that he needed a driver's license for his work. A Department of Public Safety evaluator issued Markel a Class B limited license, which on its face restricted Markel from driving vehicles other than Class B vehicles owned by the City of Circle Pines. The only Class B vehicle the city owned was a dump truck. Markel went back to work for the city doing jobs that required driving the dump truck. On November 7, 1989, the city again suspended Markel until he could obtain a Class C limited license which would allow him to drive the city's van and pickup trucks. Although technically suspended, Markel continued working full-time for the city on jobs that required the use of the dump truck or that did not require driving. In early January, the city notified Markel that he would be dismissed if he could not obtain a Class C limited license. Markel was not able to obtain a Class C limited license and he was dismissed.

After his dismissal, Markel applied for unemployment benefits. A Department of Jobs and Training adjudicator denied Markel's claim, and a referee affirmed the adjudicator's decision on appeal. Upon further appeal, the Commissioner's representative amended one finding of fact and affirmed the referee's decision. Markel then petitioned for a writ of certiorari at the court of appeals, which affirmed the Commissioner's determination that Markel was discharged for misconduct.

When reviewing a decision of the Commissioner of Jobs and Training, this court's scope of review is very narrow. Findings of fact must be "viewed in the light most favorable to the decision, and if there is evidence reasonably tending to sus-

tain them, they will not be disturbed." *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). When reviewing questions of law, this court is not bound by the Commissioner's conclusions of law, but is free to exercise its independent judgment. *Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 221 (Minn. 1981). The issue of whether a claimant is properly disqualified from the receipt of unemployment benefits is a question of law. *Id.*

In his appeal of the court of appeals decision Markel challenges two of the Commissioner's findings of fact, as well as the Commissioner's conclusion of law. Markel challenges the finding that, as a result of his accident, Markel was charged with driving with a blood alcohol level greater than .10, and ultimately pleaded guilty to that charge. The court of appeals determined that this finding was supported by Markel's own testimony in the record, and affirmed the Commissioner's finding. *Markel*, 465 N.W.2d at 410. The record of the hearing supports this finding and the decision of the court of appeals on this issue is affirmed.

■ Markel raises two new arguments in his brief, not raised below, which appear to challenge another of the Commissioner's findings of fact. The Commissioner determined that Markel's receipt of the alcohol-related driving citation, which resulted in the revocation of his license, was the reason Markel could not perform his normal job duties, and was the reason for his discharge. Markel argues that it was the Department of Public Safety's refusal to give him a limited license that would allow him to drive Class C vehicles that actually prevented him from performing his normal job duties. He also argues that he could have continued to work for the city, even without a Class C license, if he were assigned to repair gas lines, since the city always assigned two people to each truck sent to repair gas lines. These issues were not raised either at the administrative level or before the court of appeals. Fact issues not raised in an agency appeal will not be reviewed by this court. *Reserve Mining*

*Co., Babbit Division v. Gorecki*, 316 N.W.2d 547, 549 (Minn.1982).

■ The question of law presented for this court's review is whether the conduct for which Markel was dismissed, inability to perform his normal job duties, due to loss of his driver's license because of an alcohol-related driving offense, is misconduct under Minn.Stat. § 268.09, subd. 1(b) (1990). To determine this matter of first impression, we review existing authority as to what constitutes misconduct justifying a denial of unemployment benefits. A person separated from employment may be disqualified from the receipt of unemployment benefits if "the individual was discharged for misconduct, not amounting to gross misconduct connected with work or for misconduct which interferes with and adversely affects employment." Minn. Stat. § 268.09, subd. 1(b) (1990). This court further defined misconduct in *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973), where we said:

> "[T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct.'"

*Tilseth*, 295 Minn. at 374–75, 204 N.W.2d at 646 (1973), citing *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259–60, 296 N.W. 636, 640 (1941).

The Commissioner determined, and the court of appeals agreed, that the City of Circle Pines discharged Markel for conduct

which renders him ineligible for the receipt of unemployment benefits. We agree and hold that conduct which results in the loss of a license necessary for the performance of normal job duties is misconduct, within the meaning of *Tilseth*. As an employee whose ability to perform his job depended on his having a valid driver's license, Markel's behavior—drinking and driving—simply does not come within the *Tilseth* exceptions for inadvertence, negligence or errors in judgment. While some unintentional circumstances which lead to loss of a necessary occupational license might be treated differently, Markel's conduct in driving drunk, thus putting at risk his ability to drive his employer's vehicles due to loss of his driver's license, is misconduct under *Tilseth*, because it showed an intentional and substantial disregard of his duties and obligations to his employer. This is particularly true where Markel had previously lost his ability to drive because of alcohol related violations of the law, and thus necessarily must have understood the risk which he was taking. These circumstances satisfy the statutory requirement of misconduct and the definition of misconduct under *Tilseth*.[1]

Markel argues that the Commissioner's determination of misconduct is inconsistent with this court's decision in *Swanson v. Columbia Transit Corp.*, 311 Minn. 538, 248 N.W.2d 732 (1976). In *Swanson*, a school bus driver was discharged after he had three accidents in a forty-seven day period. *Id.* at 538, 248 N.W.2d at 732. When the driver applied for unemployment compensation benefits the Commissioner denied his claim, ruling that he had been discharged for misconduct. *Id.* After reviewing the record, this court held that the employee's accidents were incidents of inadvertence or negligence and did not rise to the level of misconduct. *Id.* at 539, 248 N.W.2d at 733.

Markel's situation is quite different than that of the driver in *Swanson*. Markel was charged and convicted of a criminal offense which rendered him legally incapable of performing the duties required of him by his employer, while the driver in *Swanson* had not disqualified himself in a similar fashion, and thus could still legally perform his normal job duties. Furthermore, Markel's conduct, driving while under the influence of alcohol, is plainly more culpable than that of the driver in *Swanson*, who had committed no crime. Drunken driving is a criminal offense in Minnesota, Minn. Stat. § 169.121 (1990), the penalty for which is automatic revocation of one's driver's license. Minn.Stat. § 169.21, subd. 4 (1990). These automatic revocation procedures indicate the Legislature's determination of the seriousness of this offense. Markel's conduct, a criminal offense, left him legally incapable of performing his normal job duties, and is thus distinguishable from the driver's conduct in *Swanson*.

Our decision today is consistent with the decisions of other courts which have held that a dismissal under circumstances similar to Markel's constitutes dismissal for misconduct, so as to eliminate eligibility for unemployment benefits. A professional driver who is dismissed after revocation of his or her driver's license due to driving while under the influence of alcohol, while off-duty, is dismissed for misconduct. *Look v. Maine Unemployment Ins. Comm'n*, 502 A.2d 1033 (Me.1985); *Grimble v. Brown*, 247 La. 376, 171 So.2d 653 *cert. denied*, 382 U.S. 861, 86 S.Ct. 123, 15 L.Ed.2d 99 (1965). Other states have acted under alternative theories to deny unemployment benefits to persons who lost their jobs because of traffic violations. In New Jersey a truck driver, who lost his job when his driving privileges were suspended due to a conviction for driving while under the influence, was considered to have left work voluntarily under a theory of con-

---

1. There is some indication in the record that Markel is an alcoholic. Minnesota's Employment Security statute does not allow a person to be disqualified for misconduct if the person is discharged due to chemical dependency and has made reasonable efforts to maintain employment. Minn.Stat. § 268.09, subd. 1(c)(2) (1990).

Markel has not made any claim of discharge due to chemical dependency, nor has he offered any proof of consistent efforts to maintain the treatment necessary to control his illness that might satisfy the statute's requirement of reasonable efforts to maintain employment.

structive voluntary quit. *See Yardville Supply Co. v. Bd. of Review, Dept. of Labor,* 114 N.J. 371, 554 A.2d 1337 (1989). The Michigan Supreme Court held that a cab driver suspended by his employer because of a 90–day license revocation quit voluntarily. *See Echols v. Mich. Employment Sec. Comm'n,* 380 Mich. 87, 155 N.W.2d 824 (1968).

In conclusion, we agree with the court of appeals and the Commissioner of Jobs and Training that Markel was discharged for misconduct and is not entitled to unemployment benefits.

Affirmed.

WAHL, Justice (dissenting).

I respectfully dissent. Normally, when eligibility for unemployment compensation benefits is disputed, the employer has the burden of proving the requisite facts to bring the employee within the statutory deprivation of benefits. *Brown v. Port of Sunnyside Club, Inc.,* 304 N.W.2d 877, 879 (Minn.1981); *Lumpkin v. North Central Airlines, Inc.,* 296 Minn. 456, 459, 209 N.W.2d 397, 400 (1973). In my view, where the City of Circle Pines apparently elected not to participate in this unemployment benefits matter,[1] and where the evidence pertaining to the City's decision to discharge Markel from employment was far from clear, the requisite factual predicate for disqualification of an otherwise eligible employee was not developed.

The record reflects Markel's job required that he transport himself from site to site in his employer's vehicles to accomplish whatever utility work was necessary. The record further reflects that following the revocation of Markel's drivers' license, the city did not discharge Markel from employment. To the contrary, the city prepared the letter upon which the Department of Public Safety "evaluator" relied in issuing a "Sullivan limited" license, allowing him to drive "Class B" vehicles owned and operated by the City. Markel also indicated the Department of Public Safety evaluator retained the employer's letter. When the

hearing officer questioned Markel about the restrictions attached to the "Sullivan limited" license, Markel indicated the Department of Public Safety had given him several different opinions as to what his driving restrictions were, including that the license allowed him to drive only the city's dump truck. The record further reflects the city did not discharge Markel until nearly 4 months after the license revocation when Markel was unable to obtain a license that would have allowed him to drive employer owned and operated vehicles, other than the dump truck, for work-related purposes. Finally, the record reflects Markel had no idea as to why the Department of Public Safety had not issued the needed license; and no explanation was provided by either the employer or the Department of Public Safety. In affirming Markel's disqualification from receipt of unemployment benefits, the majority of this court, as well as the majority of the court of appeals, focused on the event leading to the revocation of the drivers' license; but generally, we look to all of the events leading to a termination from employment. *See E.g., Brown, supra.*

In addition, if we are to walk backwards through the events which set in motion the ultimate discharge from employment, then I believe we cannot ignore the factual determination that Markel is an alcoholic. A claimant who is discharged for misconduct due to chemical dependency may not be disqualified unless the claimant has not made consistent efforts to control the illness. The standard requires an evaluation of the claimant's efforts, not the results. *Leslin v. County of Hennepin,* 347 N.W.2d 277, 279 (Minn.1984); *Moeller v. Minnesota Department of Transportation,* 281 N.W.2d 879, 882 (Minn.1979); Minn.Stat. § 268.09, subd. 1(c)(2). To me, the record in this case reflects that the conduct leading to the license revocation was due to chemical dependency, that Markel was very concerned about retaining his job with the city, and that he made

---

1. The City of Circle Pines did not even respond to the Department of Jobs and Training request

for information on employee separation. Minn. Rule 3310.2800, subp. 1.

reasonable attempts to retain his job and control his addiction. *See Moeller, supra.*

For these reasons, I would have reversed Markel's disqualification from receipt of unemployment benefits.

SIMONETT, Justice.

I join in the dissent of Justice Wahl.