**Richard W. GINSBERG, Relator,**

v.

**MINNESOTA DEPARTMENT OF JOBS AND TRAINING, Commissioner of Jobs and Training, Respondents.**

No. C8–91–1540.

Court of Appeals of Minnesota.

Feb. 18, 1992.

Review Denied April 9, 1992.

Mark W. Malzahn, Anoka, for Richard W. Ginsberg.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, James P. Barone, Sp. Asst. Attys. Gen., St. Paul, for Minnesota Dept. of Jobs and Training.

Considered and decided by NORTON, P.J., and CRIPPEN and KALITOWSKI, JJ.

## OPINION

NORTON, Judge.

Richard Ginsberg, formerly an Assistant to the Commissioner and Economic Opportunity Director in the Department of Jobs and Training, sought and was denied unemployment benefits. The Commissioner of Jobs and Training, in denying Ginsberg's claim, reasoned that he was ineligible for benefits because he had not been "employed" by the Department of Jobs and Training; rather, he had worked in a "major nontenured policymaking or advisory position in the unclassified service." We affirm.

## FACTS

Richard Ginsberg began working for the Department of Jobs and Training in March 1988. Ginsberg's first position in the Department was "Assistant to the Commissioner". The Commissioner of Jobs and Training at that time was Joe Samargia.

Before Ginsberg accepted the Assistant to the Commissioner position, he prepared a position description, outlining the proposed purposes, principal responsibilities, and requirements of the position. Based on that position description, the Assistant to the Commissioner position was designat-ed as unclassified by the Minnesota Department of Employee Relations.

Ginsberg served as Assistant to the Commissioner until March 1990. In May 1990, Commissioner Samargia appointed Ginsberg to the new position of Economic Opportunity Director. That position was also unclassified. Ginsberg served as Economic Opportunity Director until February 1991. By then, a new governor had appointed a new Commissioner of Jobs and Training. The new Commissioner removed Ginsberg from his position.

Ginsberg submitted a claim for unemployment benefits to the Department of Jobs and Training, but a claims adjudicator determined that Ginsberg was ineligible to receive benefits. The adjudicator reasoned that Ginsberg had not earned wages in covered "employment," because his services for the Department were performed in major nontenured policymaking and/or advisory positions in the unclassified service.

Ginsberg appealed to a Department of Jobs and Training referee, who conducted a hearing and received testimony and evidence from Ginsberg and Samargia. Ginsberg testified that neither the Assistant to the Commissioner position nor the Economic Opportunity Director position required him to make or establish policy. Ginsberg also testified that the position description for the Assistant to the Commissioner position did not accurately characterize his duties. Samargia testified that ultimate policy decisions were made by the Department's management team, Assistant Commissioners,[1] the Governor, or the Chief of Staff.

Following the hearing, the referee issued a determination that Ginsberg had been "employed" in his two positions of Assistant to the Commissioner and Economic Opportunity Director. The referee reasoned that neither of the two positions had been policymaking or advisory positions.

The Department appealed the referee's decision to a Commissioner's representative, who reversed the referee and deter-

---

1. Ginsberg clarified that an Assistant Commissioner and an Assistant to the Commissioner were different positions.

mined that both of Ginsberg's positions had been policymaking or advisory positions.

Ginsberg has obtained a writ of certiorari, seeking review of the Commissioner's representative's decision.

## ISSUES

I. Should the Commissioner's decision be rejected because the Commissioner was relator's former employer as well as the administrator of the unemployment benefits program?

II. Did the Commissioner err by determining that Ginsberg's services were performed in major policymaking or advisory positions?

III. Did the Commissioner err by failing to rely on an earlier unrelated decision by a Department referee?

## ANALYSIS

### I.

The Commissioner of Jobs and Training was Ginsberg's former employer, as well as the tribunal that denied Ginsberg's claim for unemployment benefits. Ginsberg argues the Commissioner was biased against him and should not have participated in the decisionmaking process.

■ Due process requires a decision by an impartial official; an official who has been involved in the particular aspect of a case under review should not also participate in the decisionmaking process. *Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1970). Nevertheless, the "rule of necessity" may require an officer to serve in a decisionmaking capacity, no matter how disqualified by reason of bias, prejudice or partiality. 3 Kenneth C. Davis, *Administrative Law Treatise* § 19:9 (2d ed. 1980). The rule of necessity is applicable where there is no other tribunal available with the authority to decide a controversy. *Id.* (citing *Federal Trade Comm'n v. Cement Inst.,* 333 U.S. 683, 700–03, 68 S.Ct. 793, 803–04, 92 L.Ed. 1010 (1948)). Here, the rule of necessity was applicable because the Commissioner of Jobs and Training, through

her representatives, was the only official authorized by law to determine Ginsberg's entitlement to unemployment benefits.

Ginsberg argues that under the special circumstances of this case, the Commissioner should have appointed a neutral hearing officer or panel to receive the evidence and make recommendations to the Commissioner. There is no statutory authority for this procedure. We also note that the referee, who acted as the hearing officer and received the evidence, held in Ginsberg's favor. Accordingly, the assignment of an independent hearing officer would have been of dubious value.

■ Our review of the Commissioner's decision is governed by the Administrative Procedure Act, chapter 14. Minn.Stat. § 268.12, subd. 13(4) (1990).

> [T]he court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:
> (a) In violation of constitutional provisions; or
> (b) In excess of the statutory authority or jurisdiction of the agency; or
> (c) Made upon unlawful procedure; or
> (d) Affected by other error of law; or
> (e) Unsupported by substantial evidence in view of the entire record as submitted; or
> (f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1990). Although we apply the above standard of review, we exercise particular caution in light of the special circumstances of this case:

> Whenever the rule of necessity is invoked and the administrative decision is reviewable, the reviewing court, without altering the law about scope of review, may and probably should review with special intensity.

3 Davis, *supra,* § 19:9.

### II.

■ Ginsberg argues the Commissioner erred by determining that the Assistant to

the Commissioner and Economic Opportunity Director positions were exempt from the definition of "employment" pursuant to Minn.Stat. § 268.04, subd. 12(10) (1990):

> [T]he term "employment" does not apply to service performed
>
>       \*      \*      \*      \*      \*      \*
>
> (f) ... by an individual in the exercise of duties
>
>       \*      \*      \*      \*      \*      \*
>
> (v)(a) in a position with the state of Minnesota which is a major nontenured policymaking or advisory position in the unclassified service.

The Department has promulgated rules explaining what constitute policymaking and advisory positions:

> An individual in a policy-making position is one who determines the direction, emphasis, and scope of action in the development and the administration of governmental programs. An individual in an advisory position is one who advises governmental agencies and officers with respect to policy, program, and administration without having authority to implement its recommendations. \* \* \* If a law \* \* \* does not clearly and specifically so label a position, other pertinent factors used in determining whether a position is advisory or policy-making include:
>
> A. job descriptions;
> B. qualifications required of individuals for the position; and
> C. responsibilities involved.
>
> The most important factor \* \* \* is whether a particular position is designated as a major nontenured policy-making or advisory position under state law.

Minn.R. 3315.0530 subp. 4 (1991).

The courts in Minnesota have not previously addressed the issue of policymaking or advisory positions within the context of the unemployment statutes and rules. Policymaking and/or advisory positions have been considered in other contexts, however. In *McGraw v. Marion County Plan Comm'n*, 131 Ind.App. 686, 174 N.E.2d 757 (1961), the court defined the term "advisory" in the context of a dispute whether an advisory commission's decision was appealable. The court stated:

> The word "advisory" means: "Counselling, suggesting, or advising, but not imperative or conclusive." Black's Law Dictionary (Fourth Edition). It implies that the Plan Commission may be "advised." The verb "advise" means: "To give an opinion or counsel, or recommend a plan or course of action."

*Id.* at 693, 174 N.E.2d at 760. In *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the court discussed "policymaking" versus "nonpolicymaking" positions in a situation where an individual was discharged because of his political beliefs. The court concluded that a discharge based on patronage is generally unconstitutional, but an exception exists where an individual is in a policymaking position that has the potential for undercutting a new administration.

> No clear line can be drawn between policymaking and nonpolicymaking positions. \* \* \* The nature of the responsibilities is critical. \* \* \* An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position. In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals.

*Id.* at 367–68, 96 S.Ct. at 2687.

In *Rico v. State*, 472 N.W.2d 100 (Minn. 1991), an Assistant to the Commissioner of the Department of Veterans Affairs was removed from his position, and he sued for breach of contract and retaliatory discharge. The court concluded that the nature of Rico's position entitled the state to governmental immunity under the discretionary function exception. The court stated:

> Rico, as Assistant to the Commissioner, was part of Commissioner Gregg's management team—an unclassified employee with a substantial role in formu-

lating and implementing departmental policy. * * *

* * * * * *

* * * The authority to choose the top leaders in the administration—and accordingly also to remove them—is essential to effectuate the governor's public policy goals. Consequently, the job security of these high-level government officials traditionally has been subject to the ebb and flow of political tides and public opinion.

*Id.* at 105. The court noted that Rico's position had been determined to be "comparable to Assistant to the Commissioner positions in other [state] departments." *Id.* at 103.

The cases discussed above support the Commissioner's conclusion that Ginsberg was in a major policymaking or advisory position. We particularly note that Ginsberg was discharged by the new governor's commissioner, suggesting that he was in a position to thwart the goals of the new governor.

Ginsberg argues the Commissioner's representative erred by focusing upon the position descriptions when concluding both positions were "major policymaking or advisory positions."[2] Instead, Ginsberg argues, the Commissioner's representative should have considered more carefully the testimony regarding Ginsberg's actual duties in the positions.

This argument assumes Ginsberg's testimony was more believable than the position descriptions themselves. We have previously indicated that the Commissioner's representative may reject testimony by parties in favor of documentary evidence. *See, e.g., Seemann v. Little Crow Trucking,* 412 N.W.2d 422, 426 (Minn.App.1987) (Commissioner's representative properly relied upon letters and rejected testimony at the hearing, determining the testimony was not credible); *Brunello v. Mill City Auto Body,* 348 N.W.2d 409, 411 (Minn.App.1984) (Commissioner's representative properly relied upon statements on Department forms rather than oral testimony by parties).

■ Ginsberg also argues the legislature in Minn.Stat. § 268.04, subd. 12(10)(f)(v)(a) evidenced an intent that the duties of the position are more important than the position itself. We disagree. The term "employment" excludes service performed in the exercise of duties

in a *position* with the state of Minnesota which is a major nontenured policymaking or advisory *position* in the unclassified service.

Minn.Stat. § 268.04, subd. 12(10)(f)(v)(a) (emphasis added). The legislature's inclusion of the term "position" is critical.

[I]t is a well-established rule of statutory construction that every term of a statute should be given meaning when possible.

*Schaeffer v. Newberry,* 235 Minn. 282, 290, 50 N.W.2d 477, 482 (1951) (footnote omitted). *See also* Minn.Stat. § 645.17(2) (1990) (entire statute should be construed as effective and certain.)

Ginsberg claims that prior caselaw from this court indicates the substance of the parties' relationship, rather than the parties' characterization of that relationship (by means of a position description) should govern a determination whether an employment relationship existed. In support of this argument, Ginsberg cites *Speaks, Inc. v. Jensen,* 309 Minn. 48, 243 N.W.2d 142 (1976).

The *Speaks* court interpreted a statute which distinguishes between employees and independent contractors, and exempts services by independent contractors from employment. *See id.* at 50–52, 243 N.W.2d at 144–45. A different statute is at issue here, involving different terms and policies. Accordingly, we do not believe the *Speaks* analysis is applicable.

### III.

■ Ginsberg argues the Commissioner erred by ignoring a 1986 decision by a Department referee. The prior decision involved a claim for unemployment benefits by an official who reported to the Commissioner of Economic Security (the predeces-

---

**2.** Ginsberg does not dispute that both positions were nontenured and unclassified positions.

sor title of the Commissioner of Jobs and Training).

We are aware of no authority requiring the Commissioner or her representatives to follow decisions by Department referees. In fact, the legislature authorizes the Commissioner or a representative to review decisions by referees and modify or set aside any decision or finding of fact based upon the evidence. Minn.Stat. § 268.10, subd. 5 (1990). The Commissioner is not bound by referees' decisions in related or unrelated matters.

## DECISION

The Commissioner properly concluded that Ginsberg's positions as Assistant to the Commissioner and Economic Opportunity Director were policymaking or advisory positions.

Affirmed.