**In the Matter of the WELFARE OF K.E.H., Child.**

No. C2-95-1736.

Court of Appeals of Minnesota.

Jan. 30, 1996.

---

John M. Stuart, State Public Defender, Charlann Winking, Assistant Public Defender, Minneapolis, for Appellant.

Hubert H. Humphrey, III, Attorney General, St. Paul, Michael O. Freeman, Hennepin County Attorney, Paul R. Scoggin, Assistant County Attorney, Minneapolis, for State.

Considered and decided by PARKER, P.J., and SCHUMACHER and DAVIES, JJ.

## OPINION

PARKER, Judge.

Appellant K.E.H. was charged with one count of murder for his participation in the gang-related, drive-by shooting death of Ronald Scales, Jr. K.E.H. was adjudicated delinquent by a juvenile court referee and, to protect him from other gang members, was sentenced to an out-of-state residential treatment facility. The district court then granted the state's motion to compel K.E.H. to testify before the grand jury pursuant to a grant of immunity. K.E.H. refused to testify at the grand jury hearing. The district court found him guilty of direct criminal contempt pursuant to Minn.Stat. § 588.20. K.E.H.'s original juvenile disposition was stayed, and he was sentenced to six months in a local juvenile facility unless he sooner agreed to purge his contempt by testifying.

## FACTS

K.E.H. is a 13–year–old child with no prior criminal record. In March 1995, he and fellow gang members perpetrated a drive-by shooting at a home where they believed a rival gang was having a party. Ronald Scales Jr. was struck in the head by a bullet and later died.

A few days later, K.E.H. sought out the juvenile officer at his school and admitted passive involvement in the shooting: he told of riding in the car but not firing a gun at the house. K.E.H.'s statement to police identified the other gang members in the car only by their street names, which was insufficient identification for police purposes.

K.E.H. was adjudicated delinquent and was placed on probation. His file was ordered taken out of circulation for his own safety and he was ordered to an out-of-state residential treatment facility.

The state moved to compel K.E.H. to testify before the grand jury pursuant to a grant of immunity. The court granted the state's motion and K.E.H. was brought before the grand jury for questioning. During the proceedings, he refused to identify the other individuals in the car at the time of the shooting.

Immediately following the grand jury proceeding, the parties reconvened before the juvenile court judge. The state informed the trial court that K.E.H. had refused to answer the questions put to him, and the grand jury court reporter read K.E.H.'s testimony aloud to the trial court. The judge then found K.E.H. to be in direct criminal contempt of court, stayed his juvenile court disposition order, and ordered him confined for six months or until he agreed to testify before the grand jury.

On appeal, K.E.H. alleges that (1) the court erred in finding him in direct criminal contempt; (2) if he was properly adjudged in contempt of court, the court should have found constructive criminal contempt, which would entitle him to a hearing; and (3) the court erred in staying the original juvenile disposition and instead requiring him to begin serving the contempt sentence immediately.

## ISSUES

I. Is K.E.H. guilty of criminal or civil contempt?

II. Is the contempt direct or constructive?

III. Did the juvenile court err in staying K.E.H.'s originally imposed juvenile court disposition and instead requiring him to serve the contempt sentence immediately?

## DISCUSSION

 On appeal from a contempt order, the reviewing court may determine the reasonableness, arbitrariness, or discriminatory character of such order and may reverse or modify the order if it concludes that the trial court abused its discretion in entering that order. *Minnesota State Bar Ass'n v. Divorce Assistance Ass'n, Inc.,* 311 Minn. 276, 284, 248 N.W.2d 733, 740 (1976). A reviewing court is not bound by, and need not give deference to, a trial court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn. 1984).

### I.

K.E.H. argues that if he can be adjudged guilty of any contempt, the finding by the court should have been that the contempt was constructive. He contends that because the conduct found to constitute contempt took place outside the view and presence of the trial court, he may be guilty only of a constructive contempt and therefore entitled to the full protection of a jury trial. The state argues, conversely, that K.E.H. is guilty of direct contempt.

Minn.Stat. § 588.01, subd. 2, provides:

Direct contempts are those occurring in the immediate view and presence of the court, and arise from:

(1) Disorderly, contemptuous, or insolent behavior toward the judge while holding court, tending to interrupt the due course of a trial or other judicial proceedings;

(2) A breach of the peace, boisterous conduct, or violent disturbance, tending to interrupt the business of the court.

*Id.*

Contempt is direct only if the judge has personal knowledge, at the time the contumacious conduct occurs, of *all* the operative facts which constitute the offense of contempt and are necessary for a proper adjudication of appellant's guilt.

*State v. Garcia*, 481 N.W.2d 133, 137 (Minn. App.1992). "Direct contempt may be punished summarily." *In re Welfare of E.J.B.*, 466 N.W.2d 768, 770 (Minn.App.1991); *see* Minn.Stat. § 588.03 (1994).

■ "Whether contempt is direct or constructive depends upon who witnesses the contempt and has personal knowledge of it." *In re Contempt of Armentrout*, 480 N.W.2d 685, 688 (Minn.App.1992).

Minn.Stat. § 588.01, subd. 3, provides:

Constructive contempts are those not committed in the immediate presence of the court, and of which it has no personal knowledge, and may arise from any of the following acts or omissions:

\* \* \*

(2) deceit or abuse of the process or proceedings of the court by a party to an action or special proceeding;

(3) disobedience of any lawful judgment, order, or process of the court.

*Id.*

■ Applying the facts of this case to the statutory provisions, we conclude that K.E.H's conduct fits squarely into Minn.Stat. § 588.01, subd. 3(3), defining constructive contempt. The prosecution argues that the grand jury proceeding is merely an arm of the trial court; we believe, however, that the legislature has rejected this argument by drafting the statutory contempt provisions so explicitly.

Because K.E.H. disobeyed a court order out of the immediate view and presence of the trial court, we follow the statutory definition. A plain reading of the statute dictates the conclusion that, if K.E.H. is guilty of contempt, it must be a constructive contempt. Minn.Stat. § 588.01, subd. 3(3).

## II.

K.E.H. also argues that the trial judge erred in finding him guilty of a criminal contempt.

Minn.Stat. § 588.20 (1994) defines criminal contempt:

Every person who shall commit a contempt of court, of any one of the following kinds, shall be guilty of a misdemeanor:

(1) disorderly, contemptuous, or insolent behavior, committed during the sitting of the court, in its immediate view and presence and directly tending to interrupt its proceedings, or to impair the respect due to its authority;

\* \* \*

(4) willful disobedience to the lawful process or other mandate of a court.

■ The purpose of a finding of "[c]riminal contempt is to preserve the authority of the court by punishing past misconduct." *Welfare of E.J.B.*, 466 N.W.2d at 770 (quoting *In re Welfare of A.W.*, 399 N.W.2d 223, 225 (Minn.App.1987)). The prescribed punishment for a criminal contempt is an unconditional and fixed sentence. *Welfare of A.W.*, 399 N.W.2d at 225. On the other hand,

[c]ivil contempt proceedings are designed to induce future performance of a valid court order, not to punish for past failure to perform.

*Mahady v. Mahady*, 448 N.W.2d 888, 890 (Minn.App.1989) (citing Minn.Stat. § 588.12 (1988); *Minnesota State Bar Ass'n*, 311 Minn. at 285, 248 N.W.2d at 741).

Thus, civil contempt is said to give the contemnor the keys to the jail cell, because compliance with the order allows him to purge himself and end the sanction.

*Mahady*, 448 N.W.2d at 890 (citing Minn. Stat. § 588.12).

Whether contempt is civil or criminal is determined by the court's purpose in responding to the alleged misconduct, rather than the nature of the misconduct itself. The purpose of the civil contempt is to coerce future compliance by imposition of a

sanction of indefinite duration terminable on compliance or inability to comply.

*Welfare of E.J.B.,* 466 N.W.2d at 769 (quoting *Welfare of A.W.,* 399 N.W.2d at 225); *see also Hopp v. Hopp,* 279 Minn. 170, 173, 156 N.W.2d 212, 216 (1968).

■ Because the sentence imposed is determinative of the criminal or civil nature of the contempt, we are here concerned with a civil contempt. The sentence given to K.E.H. was "designed to coerce future compliance" with the trial court's order to testify. Furthermore, the trial court made it clear that K.E.H.'s sentence was conditional because he had the ability to purge the contempt sentence by responding to the questions put to him before the grand jury:

> K.H. is to be held in violation of the criminal contempt statute for six months or until such time as he notifies this court that he wishes to clear the contempt and testify before the grand jury.

Although the trial court found K.E.H. in criminal contempt, the contumacious act itself and the conditional nature of the sentence comport with the statutory definition of a constructive civil contempt. We conclude that the trial court erred in adjudging K.E.H. guilty of direct criminal contempt, and hold that the charge against K.E.H. is properly described as a constructive civil contempt under Minn.Stat. §§ 588.01, subd. 3, and 588.12.

■ A sentence for constructive civil contempt must maintain the contemnor's ability to purge the sentence:

> Where the grand jury has been finally discharged, a contumacious witness can no longer be confined since he then has no further opportunity to purge himself of contempt.

*Shillitani v. United States,* 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966).

> Once the grand jury ceases to function, the rationale for civil contempt vanishes, and the contemnor has to be released.

*Shillitani,* 384 U.S. at 372, 86 S.Ct. at 1536. However, if the witnesses continue their refusal to testify before a successor grand jury, the sentences of imprisonment may be continued or reimposed. *Shillitani,* 384 U.S. at 372 n. 8, 86 S.Ct. at 1536 n. 8.

■ We hold that K.E.H.'s contempt sentence could not run beyond the term of the grand jury sitting at the time of his refusal to obey the court order to testify and until the earliest date of the succeeding grand jury. K.E.H. could, on these facts, be guilty of no more than a constructive civil contempt subject to a conditional sentence to a term corresponding to that of the grand jury.

### III.

We now turn to the relationship of the trial court's exercise of its contempt power and the stay of the juvenile court delinquency disposition. K.E.H. argues that the trial court erred in staying that disposition and instead requiring him immediately to serve a six-month sentence on the contempt charge. He contends that the Juvenile Court Act, Minn.Stat. § 260.185 (1994), requires the court to consider the best interests of the child before imposing sentence. He also contends that it is in his best interest to serve the juvenile disposition at a residential treatment facility instead of serving the contempt sentence at the Hennepin County Juvenile Detention Center.

The supreme court has considered this question and has instructed the trial courts thusly:

> The Juvenile Court Act does not restrain the contempt power of the trial court. Nevertheless, we hold that as a matter of judicial administration it is the more prudent course to require that a juvenile found guilty of direct criminal contempt of court be confined in the kind of place acceptable under the requirements of Minn.Stat. § 260.185.

*In re Welfare of R.L.W.,* 309 Minn. 489, 245 N.W.2d 204, 207 (1976); *see also State ex. rel L.E.A. v. Hammergren,* 294 N.W.2d 705, 707 (Minn.1980) (under the most egregious circumstances, a juvenile found in contempt should be held in a secure juvenile facility).

The court has made it clear that caution should be exercised when sentencing juveniles under the contempt power of the trial court. In recognition of the intent of the

Juvenile Court Act, the supreme court has admonished trial courts to sentence juveniles found in contempt to juvenile facilities, and not to adult institutions. *See Welfare of R.L.W.*, 245 N.W.2d at 206–07.

■ The trial court here has sentenced K.E.H. to a secure juvenile facility, and we believe this sentence would not be contrary to the law. We conclude, therefore, that the stay did not unduly interfere with the Juvenile Court Act.

## DECISION

We reverse the trial court order finding K.E.H. guilty of a direct criminal contempt. We conclude that the charge describes a constructive civil contempt, and we remand to the trial court for further proceedings consistent with the requirements of Minn. Stat. §§ 588.09 and 588.10. We affirm the trial court's stay of the juvenile disposition. However, pursuant to Minn.Stat. § 588.12, we order that the contemnor be held in the secure juvenile facility designated by the trial court pending a court trial on this constructive civil contempt charge. We order that the child remain in a secure juvenile facility on remand and that the trial court expedite the hearing on this charge.

**Affirmed in part, reversed in part, and remanded for trial.**