**Henry H. RUBIN, Relator,**

v.

**WINONA STATE UNIVERSITY, Respondent,**

**Department of Employment and Economic Development, Respondent.**

No. A13–0871.

Court of Appeals of Minnesota.

Feb. 10, 2014.

Department of Employment and Economic Development, File No. 30848565–3.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Henry H. Rubin, Rochester, New York (pro se relator).

Winona State University, c/o Kristine Legler, St. Paul, Minnesota (respondent).

Lee B. Nelson, Christine Hinrichs, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department).

Considered and decided by HOOTEN, Presiding Judge; HUDSON, Judge; and MINGE, Judge.*

## OPINION

HOOTEN, Judge.

Relator challenges the denial of his claim for unemployment benefits, arguing that the unemployment law judge (ULJ) erred by determining that he is ineligible for unemployment benefits because he was employed in a major policy-making or advisory position in the unclassified service at the time his employment ended. Because the ULJ erred as a matter of law in interpreting and applying the unemployment-insurance statute, and the ULJ's finding is unsupported by substantial evidence in the record, we reverse.

## FACTS

Respondent Winona State University is part of the Minnesota State Colleges and Universities System (MNSCU). Winona State employed relator Henry R. Rubin from July 6, 2010, to December 3, 2012. At all times during his employment, Rubin earned an annual salary of $130,000 and was covered under MNSCU's personnel plan for administrators who are not covered under a collective-bargaining agreement.

Minn. Const. art. VI, § 10.

Rubin began his employment at Winona State as the Dean of the College of Education. According to the position description, his responsibilities included providing leadership and management within the college, planning and monitoring the budget of the college, managing the university as a member of the Deans' Council, securing and managing external grants and other funding to support the college, and leading the development of curriculum for the college.

In May 2012, Connie Gores, then-interim President of Winona State, ended Rubin's assignment as dean.[1] As confirmed in a letter from Gores, Rubin was "reassigned to serve as Senior Research Associate" beginning on May 29, 2012. In this role, Rubin's responsibilities included: "complete the transition of all College, Bush Foundation grant materials, and partnership development documentation"; "[c]onduct, coordinate and organize administrative and organizational research"; and "[c]omplete written project reports at the direction of the academic administrators."

After Rubin's employment with Winona State ended in December 2012, he applied for and was denied unemployment benefits by respondent Department of Employment and Economic Development (DEED). Rubin appealed, and the ULJ found that although Rubin's "job duties and working title may have changed, ... [t]he position for which Rubin was hired, as the Dean of [the] College of Education, and his appointment to that position continued through the end of his employment." The ULJ concluded that Rubin was employed in a major policy-making or advisory position in the unclassified service at all times during his employment. Accordingly, the ULJ determined that Rubin is ineligible to receive unemployment benefits. Rubin requested reconsideration and the ULJ affirmed.

This certiorari appeal follows.

## ISSUES

Did the ULJ err by determining that Rubin, after his reassignment, was employed in a major policy-making and advisory position?

## ANALYSIS

When reviewing the ULJ's determination of ineligibility for unemployment benefits, we may affirm the decision, remand it for further proceedings, or reverse or modify it if the relator's substantial rights have been prejudiced because the findings, inferences, conclusion, or decision are affected by an error of law. Minn.Stat. § 268.105, subd. 7(d)(4) (2012). To establish an unemployment-benefits account, "an applicant must have performed services in covered employment." Minn.Stat. § 268.07, subd. 2(b) (2012). "Covered employment" is essentially any employment "unless excluded as 'noncovered employment.'" Minn.Stat. § 268.035, subd. 12 (2012). "Noncovered employment" includes "employment for Minnesota that is a major policy-making or advisory position in the unclassified service." Id., subd. 20(15). "Unclassified positions" include "deans" of MNSCU. Minn.Stat. § 43A.08, subd. 1(9) (2012).

Rubin does not dispute that his employment as dean prior to his reassignment was noncovered employment because it was a major policy-making or advisory po-

1. Rubin argues that the ULJ erred in finding that his assignment as dean ended "due to a notice of involuntary termination." The issue is irrelevant, but we note that Rubin is correct because no notice of involuntary termination was submitted as evidence and Rubin's undisputed testimony is that he requested a reassignment after having first considered resignation.

sition in the unclassified service. But he argues that, starting on May 29, 2012, when he was reassigned as a Senior Research Associate, he no longer held a major policy-making or advisory position. We agree.

As a threshold matter, we clarify the standard of review that must be applied here. DEED frames the issue as one of fact and argues that substantial evidence supports the ULJ's determination that Rubin occupied the dean position after May 28, 2012. *See Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn.App. 2008) (stating that we "will not disturb the ULJ's factual findings when the evidence substantially sustains them."), *review denied* (Minn. Oct. 1, 2008). And as substantial evidence, DEED cites the testimony of Lori Reed, Winona State's chief human-resources officer, that after Rubin's reassignment, his "working title" and job responsibilities changed but "[h]is position remained Dean of the College of Education." But we are not persuaded that Reed's testimony alone is dispositive of the issue because our focus is also on the meaning of the phrase "major policy-making or advisory position" in Minn.Stat. § 268.035, subd. 20(15). So the issue is also one of law, and we review the interpretation and application of statutory language de novo. *See St. Otto's Home v. Minn. Dep't of Human Servs.*, 437 N.W.2d 35, 39 (Minn.1989) (stating that "[w]hen a decision turns on the meaning of words in a statute or regulation, a legal question is presented" and "reviewing courts are not bound by the decision of the agency").

We turn to an examination of the meaning of the phrase "major policy-making or advisory position." The unemployment-insurance statute offers no guidance. But in *Ginsberg v. Dep't of Jobs & Training*, we considered whether certain governmental positions were major policy-making or advisory positions within the meaning of the unemployment-insurance statute. 481 N.W.2d 138, 141–43 (Minn.App.1992), *review denied* (Minn. Apr. 9, 1992). The former employee argued "that the duties of the position are more important than the position itself." *Id.* at 143. We concluded, however, that "[t]he legislature's inclusion of the term 'position' is critical" and rejected the concept that "the substance of the parties' [employment] relationship, rather than the parties' characterization of that relationship (by means of a position description) should govern." *Id.* Accordingly, we held that the Commissioner of Jobs and Training did not err "by focusing upon the position descriptions." *Id.*

Based on this precedent, we must determine whether Rubin was employed in a major policy-making or advisory position by focusing on the position description. The ULJ correctly recognized this focus, but his analysis ignored the most relevant piece of evidence on the position description: Gores's letter to Rubin, which expressly removed Rubin from the dean position, assigned him to the new position of Senior Research Associate, and outlined his new responsibilities. Winona State never disputed the substance of Gores's letter, and in fact, all parties agreed that Rubin's job responsibilities changed after his reassignment. Although Gores's letter is not in the format of a "position description" within Winona State's human-resources system, we are not limited to accepting only what the employer subjectively characterizes as a position description. *Cf. id.* (discussing the use of testimonial and documentary evidence to ascertain the parties' characterization of the employment relationship). Gores's letter is functionally a position description because it captures the parties' characterization of the employment relationship; that is, Rubin was to perform

the job responsibilities of a Senior Research Associate as described therein. The ULJ's finding that Rubin continued to be a dean after his reassignment is not supported by substantial evidence in the record. *See Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency,* 644 N.W.2d 457, 466 (Minn.2002) (stating that substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Accordingly, we conclude that Rubin was no longer employed in the dean position after his reassignment.

The ULJ reasoned, and DEED argues, that even though Rubin was assigned new duties and was given a new working title, his position as dean did not end because his employment continued to be governed by MNSCU's personnel plan for administrators. But this argument fails because what Rubin received as salary and employee benefits is irrelevant to his job responsibilities. Indeed, an employee's salary-and-benefits package, alone, cannot inform us whether a position involves major policy-making or advisory functions. Consistent with *Ginsberg,* the determination of whether an employee was in a major policy-making or advisory position within the meaning of Minn.Stat. § 268.035, subd. 20(15), must be based on evidence of the position description, and not based solely on the employer's designation of employee status in its internal personnel plan.

Because the ULJ concluded that Rubin was employed in the dean position after his reassignment, the ULJ did not address whether Rubin's employment as Senior Research Associate was a major policy-making or advisory position. We conclude that it was not.

In *Ginsberg,* we stated that an individual employed in a major policy-making or advisory position would "recommend a plan or course of action," "act[ ] as an adviser or formulate[ ] plans for the implementation of broad goals," and have "responsibilities that are not well defined or are of broad scope." 481 N.W.2d at 142 (quotations omitted). As outlined in the position description set out in Gores's letter, Rubin's responsibilities as Senior Research Associate included transitioning college-related materials and documentation; conducting, coordinating, and organizing research; and writing reports at the direction of the academic administrators. Although Rubin was tasked with executing research plans, he was not tasked with formulating, recommending, or advising on research plans. And nothing in the record suggests that Rubin had responsibilities that are of broad scope and are for the implementation of broad goals. In fact, according to the position description, Rubin had well-defined responsibilities to achieve narrow goals. His "first assignment" was "to complete a content analysis of reports submitted to the [MNSCU] system office by chief academic officers," working at the direction of an administrator. After completing this first project, administrators were to assign "additional assignments." We conclude as a matter of law that, after his reassignment, Rubin was not employed in a major policy-making or advisory position within the meaning of Minn.Stat. § 268.035, subd. 20(15).[2]

## DECISION

Based on the position description effective after Rubin's reassignment from dean to Senior Research Associate, the ULJ erred in concluding that Rubin was em-

---

2. Because we conclude that the Senior Research Associate position is not a major policy-making or advisory position, we need not address whether this position is "in the unclassified service" within the meaning of Minn.Stat. § 268.035, subd. 20(15).

ployed in a major policy-making or advisory position under Minn.Stat. § 268.035, subd. 20(15). From May 29, 2012, to the end of his employment, Rubin performed services in covered employment and is eligible for unemployment benefits.

**Reversed.**