*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0725**


Timothy Myers,
Relator,


vs.


Minnesota Department of Health,
Respondent,


Department of Employment and Economic Development,
Respondent.


**Filed December 28, 2015
Affirmed
Bjorkman, Judge**


Department of Employment and Economic Development
File No. 33229136-3

Timothy Myers, Dresser, Wisconsin (pro se relator)

Minnesota Department of Health, St. Paul, Minnesota (respondent)

Lee B. Nelson, Timothy C. Schepers, Minnesota Department of Employment and
Economic Development, St. Paul, Minnesota (for respondent Department of Employment
and Economic Development)

Considered and decided by Larkin, Presiding Judge; Worke, Judge; and Bjorkman,

Judge.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Relator challenges the decision of an unemployment-law judge (ULJ) that he is ineligible for unemployment benefits, arguing that (1) he was deprived of a fair hearing and (2) the ULJ incorrectly determined that he was terminated for employment misconduct. We affirm.

## FACTS

Relator Timothy Myers was employed by respondent Minnesota Department of Health (MDH) as a Safety and Health Officer from July 2005 to February 2014. During that time, Myers was disciplined on multiple occasions for unprofessional and disrespectful actions toward fellow employees. In December 2011, Myers received a written reprimand for sending a demeaning e-mail to a colleague. In April 2012, Myers received a three-day unpaid suspension for confronting his supervisor regarding the harassment of another employee and the supervisor's alleged alcoholic behavior. Approximately one year later, Myers received a ten-day unpaid suspension for a loud and threatening outburst directed at another supervisor. Following that incident, Myers was informed that if there was "not an immediate improvement in [his] behavior, or if any other misconduct occurs, it will result in additional disciplinary action being taken, most likely dismissal." And he was told to consider the suspension a "final warning."

In November 2013, Myers confronted an IT department employee who was attempting to assist him. Myers had previously arranged with IT staff to delay a required software update until he completed a report. On the morning of the incident, Myers

contacted Brenda Bruce at the IT Help Desk because he was having problems with his computer. Bruce remotely accessed Myers's computer, assured him that it was working, and began to remove existing software in order to install the updates. Myers became upset. Bruce eventually suggested that another IT employee work with Myers. Myers agreed, told Bruce that she did not know what was going on or what Myers needed, and hung up the telephone. Bruce reported Myers's behavior to a supervisor and other IT staff. A second IT employee, Mark Godfrey, followed up with Myers later that day. Godfrey later reported that Myers was rude during their interaction and said he knew the IT department "would screw this up." In discussing the incident with supervisors, Myers became agitated and denied that he was rude toward IT staff or hung up the phone on Bruce.

Following a formal investigation, MDH terminated Myers in February 2014. MDH informed Myers in writing that his termination was based on his ongoing failure to "demonstrate self-awareness and consistent respectful behavior" as directed following his most recent suspension. The letter specifically noted that Myers's treatment of IT staff during the November 2013 incident failed to "adhere to the expectation for treating everyone professionally and with courtesy and dignity."

Myers applied for unemployment benefits and respondent Minnesota Department of Employment and Economic Development (DEED) determined that he was eligible. MDH appealed the eligibility determination, and the ULJ conducted an evidentiary hearing. Human resources consultant Patty Atchison testified on behalf of MDH. Myers testified and appeared with a union representative. Myers sought to have two additional

3

witnesses, J.S. and M.S., testify on his behalf. The ULJ was unable to reach J.S. by telephone; M.S. answered the call but declined to participate in the hearing. Myers asked the ULJ to reschedule the hearing and subpoena both witnesses. At the close of the hearing, the ULJ denied Myers's subpoena request.

The ULJ found that MDH discharged Myers due to the November 2013 incident and his pattern of unprofessional and disrespectful behavior toward coworkers. The ULJ determined that these actions constitute disqualifying employment misconduct. In reaching this conclusion, the ULJ expressly discredited Myers's version of events, noting that MDH's account of the November 2013 events was consistent with previous documented incidents where Myers had acted unprofessionally toward coworkers. Myers requested reconsideration, and the ULJ affirmed her decision. Myers brings this certiorari appeal.

## DECISION

An employee who is discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). Whether an employee committed employment misconduct is a mixed question of law and fact. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). Whether an employee committed a particular act is an issue of fact, which we review for substantial evidence, but whether the act constitutes employment misconduct is a legal question, which we review de novo. *Id.* We may reverse the decision of a ULJ "if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are . . .

4

unsupported by substantial evidence in view of the entire record as submitted." Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015).

## I.  The ULJ did not deprive Myers of a fair hearing.

Myers argues that he was deprived of a fair hearing because (1) the ULJ denied his subpoena request and (2) the ULJ did not consider a recording of a conversation between Myers and Godfrey on Myers's request for reconsideration. We address each argument in turn.

### Failure to subpoena proposed witnesses

A ULJ must "ensure that all relevant facts are clearly and fully developed." Minn. R. 3310.2921 (Supp. 2014). To accomplish this, ULJs are empowered to compel the attendance of a witness by issuing a subpoena. Minn. R. 3310.2914 (Supp. 2014). But a party's subpoena request "may be denied if the testimony . . . sought would be irrelevant, immaterial, or unduly cumulative or repetitious." *Id.* We review a ULJ's refusal to issue a subpoena for an abuse of discretion. *Icenhower v. Total Auto. Inc.*, 845 N.W.2d 849, 853 (Minn. App. 2014), *review denied* (Minn. July 15, 2014).

Myers generally asserts that MDH engaged in "capricious activity" that somehow rendered three of his witnesses "unavailable for testimony." Myers also appears to implicitly argue that the ULJ abused its discretion by declining to continue the hearing and subpoena two of his intended witnesses. We disagree.

Aside from alleging "capricious activity," Myers has not presented any evidence indicating that MDH acted to prevent witnesses from testifying on his behalf. Moreover, the ULJ was justified in denying Myers's subpoena request because the testimony of the

5

proposed witnesses was irrelevant. J.S.'s proposed testimony bears only on whether MDH's investigation of the November 2013 incident complied with procedures outlined in the union contract. And Myers admitted to the ULJ that J.S. did not have first-hand knowledge regarding the incident. Likewise, M.S.'s proposed testimony would have only addressed the general work environment at MDH, not Myers's conduct in this instance. Because the two proposed witnesses would not have supplied testimony relevant to whether Myers committed misconduct, we discern no abuse of discretion by the ULJ in denying the requested subpoenas.

**Additional evidence**

Upon a request for reconsideration, the ULJ "must not consider any evidence that was not submitted at the hearing" except for the limited purpose of determining whether to order an additional evidentiary hearing. Minn. Stat. § 268.105, subd. 2(c) (2014). The ULJ must order an additional hearing when the proposed evidence

> (1) would likely change the outcome of the decision and there was good cause for not having previously submitted that evidence; or
> (2) would show that the evidence that was submitted at the hearing was likely false and that the likely false evidence had an effect on the outcome of the decision.

*Id.* We review a ULJ's decision whether to grant an additional hearing for abuse of discretion. *Vasseei v. Schmitty & Sons Sch. Buses Inc.*, 793 N.W.2d 747, 750 (Minn. App. 2010).

Myers argues that the ULJ abused its discretion by declining to consider a recorded telephone conversation between himself and Godfrey, which Myers submitted

6

for the first time in his reconsideration request, because it would have contradicted MDH's account of the November 2013 incident. Specifically, Myers contends the recording shows that he did not act rudely toward Godfrey. We are not persuaded.

First, it is unlikely that Atchison's limited testimony that Godfrey described Myers's behavior as "quite rude" was a determinative factor in the ULJ's decision. Atchison also testified about Myers's interaction with Bruce, and detailed Myers's pattern of rude and unprofessional behavior going back to 2011. Indeed, any impeachment of Godfrey's statements would not address evidence in the record that Myers also sent a demeaning e-mail to a coworker, inappropriately accused a supervisor of being an alcoholic, and berated multiple other coworkers.

Second, Myers did not establish good cause for failing to submit the recording at the evidentiary hearing. Myers contends he did not seek to introduce the recording because Godfrey's statements were presented late in the hearing and Myers had no time to reasonably respond. This argument is unavailing. Godfrey's statements were introduced during Myers's representative's questioning of Atchison, who was the first witness. Myers's representative had ample opportunity to discredit Godfrey's statements to the employer and attempted to do so. For example, Myers's representative directed the ULJ's attention to an e-mail from Godfrey in which he described his interaction with Myers as "much more friendly." Myers could have also introduced the recording at this time or, alternatively, during his own testimony, but failed to do so.

7

Because the recording was unlikely to alter the ULJ's determination, and Myers lacked good cause for failing to introduce it at the hearing, the ULJ did not abuse its discretion in declining to admit the recording on Myers's request for reconsideration.

## II.  Myers was terminated for employment misconduct.

Employment misconduct is defined as any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee or (2) a substantial lack of concern for the employment.  Minn. Stat. § 268.095, subd. 6(a) (2014).  When an employer makes a reasonable request that does not impose an undue burden on the employee, the employee's refusal to comply with the request is misconduct.  *Nieszner v. Minn. Dep't of Jobs & Training*, 499 N.W.2d 832, 839 (Minn. App. 1993).  And when an employee has received warnings or progressive discipline for violating the same reasonable policy, the employee's continued, knowing violation of that policy constitutes misconduct.  *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 806-07 (Minn. 2002).

Myers argues that his actions are not misconduct because MDH admitted, in responding to DEED's initial request for information, that he was not "negligent" in the performance of his duties.  According to Myers, this proves that he did not engage in misconduct.[1]  We are not persuaded.  MDH did not terminate Myers for negligence in

---

[1] Apart from challenging the credibility of Godfrey's description of his behavior, on appeal Myers does not otherwise dispute the ULJ's findings of fact regarding his conduct. At the hearing, Myers denied allegations that he treated IT staff inappropriately, but the ULJ found that this denial was not credible based on Myers's well-documented history of

performing his duties. MDH terminated Myers for his repeated belligerent and disrespectful treatment of coworkers.

Upon Myers's return to work following a suspension, MDH required that he "demonstrat[e]. . . consistent respectful behaviors in the workplace" and "treat everyone professionally and with courtesy and dignity." Demanding that Myers treat his coworkers and supervisors with civility, especially following two suspensions for inappropriate behavior, was a reasonable expectation. Myers failed to comply with this reasonable expectation, and therefore committed misconduct, when he became angry with and berated Bruce. *See Montgomery v. F & M Marquette Nat'l Bank*, 384 N.W.2d 602, 605 (Minn. App. 1986) (concluding employee's insubordination and rudeness toward customers, coworkers and supervisors before and after being placed on probation constituted misconduct), *review denied* (Minn. June 13, 1986).

Moreover, while Myers's conduct in November 2013 alone is sufficient to disqualify him from receiving unemployment compensation, it was not an isolated incident. *See Nieszner*, 499 N.W.2d at 838 (noting a single incident can constitute misconduct if the employee sufficiently disregards the employer's expectations). In the face of MDH's clearly expressed expectation that Myers treat coworkers professionally and respectfully, he engaged in conduct that resulted in a written reprimand, a three-day suspension, and a ten-day suspension for disrespectful and unprofessional conduct. This

---

belligerent and confrontational behavior. We defer to such credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

9

pattern of continued, knowing violations of MDH's reasonable policy constitutes misconduct.

On this record, we conclude that MDH terminated Myers for employment misconduct.

**Affirmed.**